## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**KATHLEEN GROVE,**

      **Plaintiff,**

    **vs.**                                    **Civ. No. 13-00001 JCH/KBM**

**BUILDERS TRUST OF NEW MEXICO,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion for Partial Summary Judgment*. [Doc. 39]  Defendant moves for partial summary judgment, arguing that Plaintiff has not made a prima facie case of sex discrimination.  Although Defendant's motion is not explicitly limited to Count I, Defendant's reply shows that the motion was not directed at Count II for retaliation. [Doc. 44, p. 4, ¶ 17]  Plaintiff filed a response [Doc. 43], and Defendant filed a reply [Doc. 44].

Having reviewed the motion, briefs, evidence, and relevant law, the Court concludes that Defendant's motion for partial summary judgment should be granted.  Count I will be dismissed with prejudice.

## BACKGROUND

The following is a statement of relevant facts alleged, viewed in the light most favorable to Plaintiff.

Kathleen Grove began working as a Benefits Specialist for Builders Trust of New Mexico in September 2009.  Prior to her employment, Grove told Builders Trust that she could only accept the position if she were allowed some flexibility with her work schedule.  Since her

husband's job required him to be out of town frequently, Grove was required to provide most of the care for her minor child in addition to transporting the child to and from school.  Grove was told that she could flex her work schedule to accommodate the child's school schedule.

Defendant honored this agreement for about sixteen months.  Then, however, Grove's supervisor, Sylvester Rose-Williams, attempted to dock Grove's paid time off ("PTO")[1] instead of continuing to allow her the agreed upon flex time.  Grove complained to the Human Resources Department and her PTO time was not docked.

Shortly after this incident, Rose-Williams revoked the flex time agreement and began requiring Grove to work set hours.  Grove again complained to Human Resources, alleging that there were male employees who were allowed flex time with regard to their lunch hours.[2]

After Grove's second complaint to Human Resources, Grove was given negative performance reviews and her files were audited.  Plaintiff alleges that Rose-Williams did not audit her files randomly but chose specific files to audit; he began to discipline her for even minor errors, which were made by co-workers with impunity.[3]

On November 28, 2011, Grove was terminated from her employment.

On January 2, 2013, Grove filed suit against Builders Trust.  [Doc. 1]  Count I alleges discrimination on the basis of sex, under Title VII of the Civil Rights Act and the New Mexico Human Rights Act.  Count II alleges retaliation for Grove's opposition to sex discrimination, under Title VII and the New Mexico Human Rights Act.

---

[1] The Complaint uses without explanation the abbreviation "PTO."  The Court assumes this means "paid time off."
[2] However, Plaintiff's response makes this allegation with respect to only one male employee—Dave Schulman.  As discussed below, the Court determines that Plaintiff failed to properly support these allegations.  In making this statement of facts, the Court views the record in the light most favorable to Plaintiff but is not deciding factual issues or implying acceptance of the veracity of any witness.
[3] As discussed below, the Court determines that Plaintiff failed to properly support these factual allegations.

On February 21, 2013, Defendant filed a motion to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6).  [Docs. 11 & 12]  The Court denied the motion on September 30, 2013.  [Doc. 17]

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A defendant seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact and the defendant is entitled to judgment as a matter of law; if the defendant does so, the burden shifts to the plaintiff.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  The plaintiff cannot rest on his pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The evidence identified must be admissible.  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); Fed. R. Civ. P. 56(c)(4) (affidavit to support or oppose summary judgment must be "made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  The plaintiff must "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  The plaintiff cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory assertions.  *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx. 887, 891 (10th Cir. 2010); *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

Under Title VII it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of discrimination on the basis of sex, a plaintiff must demonstrate that:

(1)  She belongs to a protected class;
(2)  She was qualified for her job;
(3)  Despite her qualifications, she was discharged; and
(4)  Circumstances give rise to an inference of unlawful discrimination.

*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1192. If the plaintiff makes a prima facie case, the burden shifts to the employer "'to articulate some legitimate, nondiscriminatory reason'" for its action.  *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  If the defendant carries this burden, the burden shifts back to the plaintiff to prove that the reasons offered by the defendant were a pretext for discrimination.  *Id.*

A plaintiff may prove a Title VII violation either by direct evidence of discrimination or through the burden-shifting framework of *McDonnell Douglas*.  The plaintiff's burden at the

prima facie stage is "not onerous"; the plaintiff is required to present "a small amount of proof necessary to create an inference of discrimination or retaliation," by a preponderance of the evidence. *Smothers*, 740 F.3d at 539 (internal quotation marks omitted); *see Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (describing plaintiff's prima facie burden as "*de minimis*").   If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Khalik*, 671 F.3d at 1192; *Smothers*, 740 F.3d at 539 (stating that defendant's burden is one of production, not persuasion).   If the defendant does so, the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the decision or that the defendant's explanation is pretextual. *Khalik*, 671 F.3d at 1192.   Evidence of pretext may include evidence that the plaintiff was treated differently from other similarly situated employees. *Smothers*, 740 F.3d 539.   The plaintiff bears the ultimate burden of demonstrating that the defendant's stated reason is a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804.

## DISCUSSION

Under Count I, Plaintiff asserts a claim of sex discrimination under Title VII and the New Mexico Human Rights Act.  [Doc. 1, pp. 3-4]  Defendant argues that Plaintiff failed to make a prima facie case of sex discrimination under Count I for two reasons:   (A) Plaintiff's discrimination claim is based on her status as a parent rather than her gender, and parenthood is not a protected class; and (B) Plaintiff has not made an adequate showing under the fourth element of a prima facie case. [4]

---

[4] Although Defendant did not specifically reference Count I, the motion is for "partial" summary judgment. Defendant's reply shows that the motion was not addressed to Count II for retaliation.  [Doc. 44, p. 4, ¶ 17]

**A.  Protected Class**

Under the first element of a prima facie case of sex discrimination, Plaintiff was required to show that she belongs to a protected class.  *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007); *Plotke*, 405 F.3d at 1099.  Defendant argues that, although Plaintiff couches her claim as one for sex discrimination, in reality Plaintiff is claiming she was discriminated against because she is a parent—not because she is female.  [Doc. 39, pp. 5-6]

Plaintiff responds that she is in a protected class as a female—but states:  "Plaintiff believes her discrimination was based on her being a female and a mother," and a "female and a care taker of a young child."  [Doc. 43, pp. 7-8]  Plaintiff alleges that the other mothers in her department were also discriminated against—but that "an unmarried female who did not have children" was not discriminated against.  [Doc. 43, p. 2]

Many statements in Plaintiff's deposition support Defendant's argument that Plaintiff's claim is based on discrimination against her as a parent rather than as a female:

> (1) When asked in her deposition how she felt that Sylvester Rose-Williams ("Syl") discriminated against her, Plaintiff responded:  "Because I had a child, and I needed to take care of my child; and Syl made sure that that became difficult after the first part of February 2011."  [Doc. 39-1, p. 93]

> (2)  When asked whom Syl was treating differently, Plaintiff responded:  "A woman who had no husband and no children."  [Doc. 39-1, p. 94]

> (3)  When asked how the discrimination was based on her sex, Plaintiff responded that she was a mother who needed to take her child to school; in comparison, a male employee got flex time to go to the gym—not to take care of a child.  [Doc. 39-1, p. 96]

In addition, much of Plaintiff's response—both in argument and in additional factual allegations—asserts discrimination against her because she was a parent, not because she was a female:

(1)  Plaintiff argues:  "Plaintiff believes that [Rose-Williams] treated a woman without a child and without a husband differently than her."  [Doc. 43, p. 2 (citing Plaintiff's deposition testimony [Doc. 43-1, p. 94])]

(2)  "Plaintiff also believes that all but one female Benefits Specialist were being discriminated against by Sylvester Rose-Williams, with his hostile and rude behavior."  [Doc. 43, p. 2 (citing Plaintiff's deposition testimony, Doc. 43-1, pp. 96-97)]  Plaintiff testified that all of the other women in her department (besides Maria Delgadillo) had children.  [Doc. 43-1, pp. 96-97]

(3)  "The 'favorite', Maria Delgadillo, an unmarried female who did not have children, was the only female that Plaintiff believes was not discriminated against."  [Doc. 43, p. 2 (citing Plaintiff's deposition testimony, Doc. 43-1, pp. 98-99)]

(4) Disputing Defendant's alleged material fact #4 ("Plaintiff admitted in her deposition that her discrimination claim is based upon her status as a parent, not her gender."), Plaintiff argues that Defendant took her deposition testimony out of context and states:  "Plaintiff believes that, as a female and a mother of a young child, Defendant discriminated against her for the role a female has as a mother."  [Doc. 43, pp. 2-3]

(5)  Plaintiff's additional alleged fact #8 asserts that the discrimination against Plaintiff was based on Plaintiff being married and having a child, and that Rose-Williams favored another woman because she had no children and "children complicate things."  [Doc. 43, p. 3]

(6)  Plaintiff's additional alleged fact #10:  "Plaintiff also states that Mr. Rose-Williams targeted Plaintiff and co-workers who had children and displayed his anger and hostility towards them."  [Doc. 43, p. 4]  Plaintiff argues that "Mr. Rose-Williams's anger and hostility only targeted women with children."  [Doc. 43, p. 10]

As Defendant argues, the essence of Plaintiff's claim is that she was discriminated against as a parent—not as a female.  Thus Plaintiff does not compare her treatment to that of a male with children or a male who needed flex time to take care of a child, but instead compares herself to a male who wanted to go to the gym in the middle of the day.  A second comparison made by Plaintiff strongly confirms this point.  Plaintiff testified that all employees in her department were female, and all but one had children.  [Doc. 43-1, pp. 96-97]  Plaintiff alleges that "the only

female that Plaintiff believes was not discriminated against" was "an unmarried female who did not have children."  [Doc. 43, p. 2]  This comparison confirms that the discrimination claimed is not against females—but against employees with children.  Taking Plaintiff's two comparisons together, the Court concludes that Plaintiff's claim is that she was discriminated against as a member of the group of employees with children.  Thus Plaintiff does not state a claim for gender discrimination.

Plaintiff attempts to evade this conclusion by observing that "only females can be mothers," and argues that she should be categorized not "purely on a status as a parent, but as a female and a mother."  [Doc. 43, p. 8]  Even if this were a viable argument, Plaintiff does not make the relevant and logical comparison—treatment of mothers compared to treatment of fathers.  Plaintiff cites no authority to support her assertion that either "mother" or "female and a care taker of a young child" describes a protected class.  The Court concludes that Plaintiff's attempt to create a new type of gender claim is precluded by the Tenth Circuit's holding in *Etsitty*.

In *Etsitty*, a transsexual and former employee of Utah Transit Authority alleged that she was terminated because she was a transsexual.  *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1218 (10th Cir. 2007).  The plaintiff claimed that this constituted gender discrimination under Title VII and the Equal Protection Clause.  The Tenth Circuit affirmed the grant of summary judgment to the defendants, holding that transsexuals are not a protected class.  Acknowledging that Title VII is a remedial statute which should be liberally construed, the Tenth Circuit nevertheless concluded that "the definition of sex should be given its 'common and traditional interpretation' for purposes of interpreting Title VII."  *Id*. at 1221 (quoting *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081, 1086 (7th Cir. 1984)).  The Tenth Circuit agreed with *Ulane* "and the vast

majority of federal courts to have addressed this issue and conclude[d] discrimination against a transsexual based on the person's status as a transsexual is not discrimination because of sex under Title VII." *Id*. The plain meaning of "sex" in Title VII encompasses "the traditional binary conception of sex"; Title VII protects only against discrimination because a person is a male or because a person is a female. *Id*. at 1222. The Tenth Circuit stated that it declined to expand the interpretation of discrimination based on sex beyond the traditional binary definition, citing also its refusal to extend Title VII protections to discrimination based on sexual orientation. *Id*. (citing *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005)).

Plaintiff's argument would expand the definition of "sex" far beyond the expansion rejected by the Tenth Circuit in *Etsitty*. *See Druley v. Patton*, ___ Fed. Appx. ___, 2015 WL 430770, *3 (10th Cir. 2015) (unpublished)[5] (reaffirming *Etsitty*'s holding that transsexual plaintiff is not a member of a protected class). A person who decides to care for a child chooses "a social role" which is not gender-specific; a biological father or adoptive parent may also choose that social role. *Piantanida v. Wyman Ctr., Inc.*, 116 F.3d 340, 342 (8th Cir. 1997) (holding that discrimination on status of being a new parent is not a "medical condition" under Pregnancy Discrimination Act). Discrimination against a person choosing this "social role" is not based on gender. *Id*. "Title VII prohibits discrimination based on gender, not on one's status as a parent." *Boeser v. Sharp*, 2006 WL 898126, *6 (D. Colo. 2006) (unpublished). Employment decisions based on a person's status as a parent are not cognizable as gender discrimination under Title VII. *Id*.

The Court concludes that Plaintiff failed to make the requisite showing on the first element of a prima facie case of sex discrimination. Plaintiff has not shown that she was discriminated against because she was a member of the protected class of females.

---

[5] The Court cites this and other unpublished cases for their persuasive value. *See* 10th Cir. R. 32.1(A).

**B.  Fourth Element of Prima Facie Case of Sex Discrimination**

Defendant argues that Plaintiff failed to make a prima facie case of sex discrimination because she failed to establish the fourth element:  treatment less favorable than that of a similarly situated male co-worker.  [Doc. 39, p. 6]  Defendant states that the fourth prong is:  "(4) she was treated less favorably than others not in the protected class."  [Doc. 39, p. 4 (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)]   Plaintiff agrees with Defendant's statement of the fourth element.  [Doc. 43, p. 6 ("(iv) he or she was treated less favorably than others not in the protected class")]

The parties' articulation of the fourth element of a prima facie case is too limited.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (stating that district court erred in requiring plaintiff to show as part of prima facie case that he was treated differently than similarly situated employees not in protected class).  In *Kendrick*, the Tenth Circuit observed that the "Supreme Court has never addressed the question of whether comparison to a person outside of the protected class is required as part of the fourth-prong showing" of a prima facie case, and discussed varying articulations of the fourth prong.  *Id.* at 1226-29.  Although the plaintiff may satisfy the fourth prong by showing different treatment than similarly situated employees not in the protected class, such a showing is not the only way to do so.  *Id.* at 1229 & n.8; *Plotke*, 405 F.3d at 1100.

The articulation of the fourth element "may well vary, depending on the context of the claim and the nature of the adverse employment action alleged."  *Plotke*, 405 F.3d at 1099.  This is a "flexible standard that may be modified to accommodate different factual situations," and "'was never intended to be rigid, mechanized or ritualistic.'"  *Id.* (describing holding of *McDonnell Douglas*, and quoting *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1139 (10th Cir.

10

2000)).   The "essential purpose" of the prima facie case is to eliminate the most common nondiscriminatory reasons for an adverse employment action:   lack of qualifications or elimination of the job.  *Plotke*, 405 F.3d at 1100.  "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"  *Kendrick*, 220 F.3d at 1227 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Plotke*, 405 F.3d at 1100.  The Tenth Circuit listed a variety of circumstances which can give rise to an inference of unlawful discrimination, including:

> "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus …, preferential treatment given to employees outside the protected class …, in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees …, or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified.  A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, … or, more generally, upon the timing or sequence of events leading to plaintiff's termination."

*Plotke*, 405 F.3d at 1101 (quoting *Chertkova v. Conn. Gen. Life Ins.*, 92 F.3d 81, 91 (2d Cir. 1996)).

In opposing Defendant's summary judgment motion, Plaintiff argued that she had presented a prima facie case.  Plaintiff agreed with Defendant's articulation of the fourth element and explicitly argued that she established a prima facie case by showing different treatment of a male employee.  [Doc. 43, p. 8]  Plaintiff thus chose to rely on a showing of preferential treatment to another employee for the fourth element—arguing that she had a "proper comparator" (Dave Schulman, in the IT department) and that "Defendant's conduct of allowing a male employee flex time, but docking plaintiff … establishes a prima facie case of sex discrimination."  [Doc. 43, p. 8 (Heading (2))]  *See Kendrick*, 220 F.3d at 1229 & n.8 (holding

that it is error to require plaintiff to show as part of prima facie case different treatment of similarly situated employee, but plaintiff may choose to make such a showing as part of the prima facie case).  Plaintiff states that there are no male Benefits Specialists for comparison. [Doc. 43, pp. 8-9]  The Court concludes that Plaintiff failed to carry her summary judgment burden on a showing of different treatment of a similarly situated employee.

First, Plaintiff failed to identify admissible evidence on this point.  Plaintiff's response sets forth the following additional factual allegations:

> When Plaintiff's flex time was revoked, a male individual from the IT department was allowed [to] take flex time outside the policy of an hour and a half.  [Doc. 43, p. 2, ¶ 3]

> Dave Schulman's out-of-policy flex-time was honored by the COO of Builders Trust, Randy Akin, an upper-management supervisor because of an agreement with a prior supervisor.  [Doc. 43, p. 3, ¶ 7]

To support these allegations, Plaintiff cited the following two portions of her deposition testimony:

> A:  I was no longer allowed to take my child to school.  I was a mother of a young son that I needed to take to school when my husband traveled.

> Q:  And how is that based on your sex?

> A:  I'm a mother.  The IT guy got to take an hour and a half outside of the policy for lunch to go to the gym.  It wasn't to take care of children.

> [Doc. 43-1, p. 96, lines 15-21]

> Q:  Okay. Well, what discriminatory practices specifically did you complain of?

> A:  That I had flex—an exception to the 7:00 to 4:00/8:00 to 5:00 flex time when I needed to get my son to school, and that that was taken away from me; but I was specifically told that the lunch—the extended lunchtime that the IT guy was an agreement that was made between him and his prior supervisor, and that was going to be honored by the COO.

> [Doc. 43-1, p. 103, lines 12-19]

Plaintiff has not identified admissible evidence that a male employee was treated differently.[6]

To withstand a summary judgment motion, an affidavit or deposition must be based on personal knowledge and set forth admissible evidence.  *See* Fed. R. Civ. P. 56(c)(4); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).  Plaintiff identifies only her own deposition testimony, quoted above, which does not show that it is based on personal knowledge—rather than hearsay or speculation.  Mere allegations, or "conclusory and self-serving affidavits" are not sufficient.  *Hall*, 935 F.2d at 1111.  "A nonmovant must respond to a motion for summary judgment with evidence, and the content or substance of that evidence must be admissible." *Wall v. Boone*, 1996 WL 44245, *1 (10th Cir. 1996) (unpublished).  Although the evidence can be presented in a form not admissible at trial (i.e., an affidavit or deposition), "'the content or substance of the evidence must be admissible.'"  *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)).  Testimony that would be inadmissible at trial—because not based on personal knowledge, or because it constitutes hearsay—does not defeat a summary judgment motion.  *Thomas*, 48 F.3d at 485.  "So it is that, although evidence presented in the form of an affidavit at summary judgment can be 'converted' in form into live testimony at trial, the content or substance of the affidavit must be otherwise admissible, and any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration."  *Johnson*, 594 F.3d at 1210.

Thus it is "well settled" that a court must disregard hearsay contained within an affidavit or deposition when the proponent of the testimony fails to identify an applicable hearsay exception.  *Id*. at 1209.  The summary judgment process would be ineffectual if the court were to "get bogged down in a needless examination of the hypothetical ways the nonmoving party's

---

[6] Although the Complaint alleges that "there were males that had flex time with regard to lunch hours," [Doc. 1, p. 3, ¶ 14] Plaintiff's response refers only to one male employee, Dave Schulman.

evidence might be reduced to admissible form by the time of trial." *Id*. at 1210 (internal quotation marks omitted).  Instead of including hearsay within an affidavit or deposition, the nonmoving party is required to obtain affidavits from the declarants.  *Id*.

Even if Plaintiff had identified admissible evidence to show that Dave Schulman had previously been allowed midday flextime to go to the gym, Plaintiff failed to properly support her allegation that Schulman was allowed to continue that flextime after Plaintiff's flextime was revoked.  Defendant disputes Plaintiff's additional factual allegation that Schulman's midday flextime "was honored" as unsupported by Plaintiff's citation to her deposition, in which she testified only that Schulman's flextime "was going to be honored."  [Doc. 43, p. 3, ¶ 7; Doc. 43-1, p. 103; Doc. 44, p. 3, ¶ 7]  Plaintiff asserted in her deposition that Schulman was allowed an hour and a half at lunchtime to go to the gym, but failed to show that this assertion was based on personal knowledge.  Plaintiff's response alleges that Defendant was going to continue to allow Schulman's midday flextime, after Plaintiff's flextime was revoked, but fails to properly support this allegation.  In support, Plaintiff cites her deposition testimony that she "was specifically told" that Schulman's agreement "was going to be honored."  When asked who told her that, Plaintiff stated that it was Dan Stock.  [Doc. 43-1, p. 103, lines 20-21]  Hearsay within a deposition remains hearsay.  *See Johnson*, 594 F.3d at 1210.  Plaintiff's testimony fails to properly support her factual allegations because Plaintiff stated that her testimony was based on hearsay.  *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1405 (10th Cir. 1997).  Plaintiff makes no argument that this hearsay would be admissible at trial.  In addition, Plaintiff did not show that Stock had personal knowledge of this himself; it may be still another layer of hearsay, and therefore still inadmissible.

Second, even if Plaintiff had identified admissible evidence that Schulman's midday flextime continued after Plaintiff's was revoked, Plaintiff failed to show that Schulman was "similarly situated."  *See Kendrick*, 220 F.3d at 1229 & n.8; *Plotke*, 405 F.3d at 1100. "'Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.'"  *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1171 n.11 (10th Cir. 2007) (quoting *Aramburu*, 112 F.3d at 1404).  Schulman worked in a different department, under a different supervisor. Plaintiff failed to show that the responsibilities and requirements of Schulman's job were similar to Plaintiff's.  *See Johnson*, 594 F.3d at 1215.  Plaintiff failed to show that their circumstances were similar "in all relevant respects," as required.  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).  Conclusory assertions of dissimilar treatment without providing an underlying factual basis are insufficient to show different treatment.  *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *see Thomas*, 48 F.3d at 485 (stating that "generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment" (internal quotation marks omitted)).  Plaintiff failed to show that midday flextime for someone in the IT department presented the same issues and problems for the employer.

The Court concludes that Plaintiff has not identified admissible evidence which could lead a rational jury to find in her favor on this point.  *See Hall*, 935 F.2d at 1111 (holding that nonmovant's affidavits must create a genuine issue for trial, and must be "significantly probative").  Under the fourth element of a prima facie case, Plaintiff failed to show that she as a female was treated less favorably than a similarly situated male co-worker.

**C.  Other Evidence in Support of Inference of Discrimination**

Although the parties' articulation of the fourth element of a prima facie case is too limited, they did address whether there was additional circumstantial evidence to support an inference of sex discrimination.  Plaintiff argues that she identified the following additional evidence:  (1) favoritism toward the only unmarried and childless female in Plaintiff's department; and (2) Rose-Williams's verbal assaults on Plaintiff's female co-worker.

"The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"  *Kendrick*, 220 F.3d at 1227 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Plotke*, 405 F.3d at 1100.  As discussed above, a plaintiff may rely on a variety of circumstances to satisfy her burden on the fourth element. *Kendrick*, 220 F.3d at 1229 & n.8; *Plotke*, 405 F.3d at 1101.

First, Plaintiff claims that favoritism toward Maria Delgadillo constitutes circumstantial evidence of sex discrimination.  Plaintiff testified that all of the other women in her department were mothers and suffered discrimination—except for Delgadillo, who had neither husband nor child.  Plaintiff testified that:  Rose-Williams discriminated against Plaintiff "[b]ecause [Plaintiff] had a child"; and Rose-Williams treated differently "[a] woman who had no husband and no children."  [Doc. 39-1, pp. 93-94]  Plaintiff argues that discrimination against one employee cannot be cured or disproven solely because the employer treats other employees of the protected group fairly.  [Doc. 43, p. 10]  But this is not the relevant issue.  Plaintiff argues that alleged favoritism toward Delgadillo constitutes circumstantial evidence of gender discrimination against Plaintiff, but makes no logical argument to support this claim.  The Court concludes that Plaintiff's allegation that Rose-Williams favored Delgadillo because she had no

children undermines rather than supports Plaintiff's claim that Plaintiff was discriminated against because she was a female.   The allegation of favoritism supports the characterization of Plaintiff's claim as discrimination against her as a parent—not as a female.

Second, Plaintiff claims that she presented other evidence of sex discrimination: "verbal assaults on some of Plaintiff's female co-workers."  Plaintiff only identifies one "verbal assault" on one co-worker, alleging that Rose-Williams "called a female Benefits Specialist, Rosanna Martinez, into his office closed the door and began screaming, cussing and throwing objects." [Doc. 43, p. 10; Doc. 43, p. 2, ¶ 2 (additional factual allegation)]   Plaintiff cites her own deposition to support this additional factual allegation:

Q:  Okay.  What happened with Rosanna?

A:  Rosanna was called in to Syl's office.  He shut the door, threw things, and started dropping the "F" bomb and dragged my name into that verbal assault that he launched on her at that time.

Q:  Were you present in the office?

A:  I was not.

Q:  Did you hear this from Rosanna or how did you find out?

A:  I found out about it from Rosanna.

Q:  Okay.

A:  But I'm not sure if that was the impetus, but I believe that was it.

Q:  Okay.  So this incident that happened between Syl and Rosanna that you described, did you—did Syl tell you what happened, or just Rosanna told you?

A:  Rosanna advised me of what Syl had said about me, and used the "F" Word when talking about me and other things when he had her, you know, hostage in his closed office, and he was throwing things, and pounding his desk, and screaming and yelling.

[Doc. 43-1, p. 91]  Plaintiff also attached an email from herself to support this allegation.  [Doc. 43-4]  Defendant disputes Plaintiff's additional factual allegations on this subject.  [Doc. 44, p. 2, ¶ 3]  As Defendant argues, Plaintiff's statements about Rose-Williams's interaction with Rosanna Martinez are inadmissible hearsay.  Plaintiff admitted that she only knew of this incident because Martinez told her about it.  Plaintiff presents no argument that this hearsay would be admissible, and has identified to the Court no admissible evidence on this subject.  *See Johnson*, 594 F.3d at 1209-10; *Hall*, 935 F.2d at 1111.  Since Plaintiff failed to identify admissible evidence, the Court does not consider this incident in deciding the summary judgment motion.  In addition, the testimony cited by Plaintiff fails to show that Rose-Williams's "verbal assault" on Martinez or angry references to Plaintiff were based on Martinez's and Plaintiff's status as females.

To the extent that Plaintiff testified that Rose-Williams "disliked" her (because she had to take care of her child), or displayed favoritism toward Maria Delgadillo, such allegations do not constitute evidence of improper discrimination.  [Doc. 43-4; Doc. 43-1, p. 94]  *See Aramburu*, 112 F.3d at 1406 (stating that Title VII does not protect against adverse employment decisions based on personality conflict or favoritism).

The Court considers the additional circumstances discussed above along with Plaintiff's assertion of different treatment of a similarly situated male employee.  The Court concludes that Plaintiff failed to show that all of these circumstances, considered together, give rise to an inference of discrimination.  Since Plaintiff failed to make a prima facie case of sex discrimination, the Court will grant Defendant summary judgment on this claim.

## D.  Pretext

The Court has concluded that Plaintiff failed to make a prima facie case of sex discrimination.  Because of the parties' confusion over articulation of the fourth element and

caselaw observing that the showing for a prima facie case is "de minimis," however, the Court will also consider Plaintiff's argument on pretext.  Assuming arguendo that Plaintiff made a prima facie case of sex discrimination, the Court will conclude that Plaintiff failed to identify enough evidence to show pretext.  On this additional and alternative basis, the Court will grant Defendant summary judgment on Count I.

Although Defendant's motion argued only that Plaintiff had not made a prima facie case, Plaintiff took advantage of her opportunity to fully address in her response all three parts of the *McDonnell Douglas* analysis, identifying evidence and presenting argument on pretext. Defendant's motion claimed that Plaintiff was discharged because she "began to work hours outside of the flex time policy" and her "work performance began to deteriorate and her evaluations reflected the decline in her performance."  [Doc. 39, p. 2]  Plaintiff acknowledged that she had received negative performance evaluations.  [Doc. 43, p. 5, ¶¶ 17-18]  "Poor performance 'is the quintessential legitimate, nondiscriminatory reason for termination.'" *Brainerd v. Schlumberger Tech. Corp.*, 589 Fed. Appx. 406, 412 (10th Cir. 2015) (unpublished) (quoting *Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012)).  The Court concludes that Defendant carried its burden of production to proffer a legitimate, nondiscriminatory reason for the adverse employment action.  *Khalik*, 671 F.3d at 1192; *Smothers*, 740 F.3d at 539.  The burden then shifted back to Plaintiff to show that protected status was a determinative factor in the decision or that Defendant's explanation is pretextual.  *Khalik*, 671 F.3d at 1192.

Acknowledging that Defendant proffered a facially nondiscriminatory reason for discharging her, Plaintiff responded with an argument that this was pretextual.  [Doc. 43, pp. 11-12]  Plaintiff's response sets forth three additional factual allegations.  [Doc. 43, p. 5, ¶¶ 17-19]  Plaintiff alleged that Rose-Williams began to selectively audit Plaintiff's files and to give her

19

negative evaluations, including citing her for errors for which co-workers were not criticized. Plaintiff argues that these allegations, together with her allegations that she was treated differently than Maria Delgadillo, show that Defendant's proffered reason for terminating Plaintiff was pretextual because it was inconsistent and implausible.   [Doc. 43, pp. 11-12] Defendant objects to these allegations as unsupported and irrelevant—stating that they are relevant to the retaliation claim (Count II), which is not before the Court on Defendant's motion for partial summary judgment.   [Doc. 44, pp. 4-5]

Plaintiff fails to properly support critical parts of her additional factual allegations, ¶¶ 17-19.   [Doc. 43, p. 5]   The cited portions of Plaintiff's deposition do not show personal knowledge that random audits were conducted on Plaintiff's co-workers, or that co-workers were not cited or disciplined for the same errors.   [Doc. 43-1, p. 106, lines 13-20]   *See Hall*, 935 F.2d at 1111; Fed. R. Civ. P. 56(c)(4).   These conclusory assertions are not adequate, and do not show that they are based on anything other than hearsay or speculation.   *See Murray*, 45 F.3d at 1422; *Thomas*, 48 F.3d at 485.   The Court does not consider these allegations, because they are not properly supported.   *See Johnson*, 594 F.3d at 1209-10.

Plaintiff recognizes that her performance reviews "went down."   While this might potentially support a claim of retaliation, it does not show that Defendant's proffered nondiscriminatory reason for discharging Plaintiff was pretextual.   Plaintiff has identified no evidence to show that the negative performance evaluations were issued because Plaintiff was a female.   *See Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 Fed. Appx. 728, 731-32 (10th Cir. 2014) (unpublished).   Indeed, Plaintiff's additional factual allegations assert that she was treated differently than other females in her department—not that she was treated differently than

males.  And Plaintiff's argument that she was treated differently than Maria Delgadillo again fails to support a claim of discrimination because Plaintiff is a female.

As discussed above, a showing of different treatment of similarly situated employees can demonstrate pretext.  The Court therefore considers Plaintiff's argument on this point in determining whether Plaintiff has made a showing of pretext.  But, for the same reasons discussed above, Plaintiff failed to identify admissible evidence to show different treatment of a similarly situated male employee.  Considering Plaintiff's argument on this point, along with her other arguments specifically directed to the pretext part of the *McDonnell Douglas* analysis, the Court concludes that Plaintiff failed to make an adequate showing of pretext.

Assuming arguendo that Plaintiff made a prima facie case of sex discrimination, the Court concludes that Plaintiff failed to carry her burden to demonstrate that Defendant's proffered legitimate, nondiscriminatory reason was pretextual.  Defendant is entitled to summary judgment on Count I on this additional and alternative basis.

## E.  Hostile Work Environment

Count I of the Complaint also claims that Plaintiff was subjected to a hostile work environment.  [Doc. 1, p. 4]

Title VII prohibits subjecting an employee to a hostile work environment.  *Harsco Corp. v. Renner*, 476 F.3d 1179, 1186 (10th Cir. 2007).  To establish a hostile work environment due to sexual harassment, the plaintiff must prove that:

(1)  She is a member of a protected group;
(2)  She was subject to unwelcome harassment;
(3)  The harassment was based on sex; and
(4)  The harassment was severe or pervasive enough to alter a term, condition, or privilege of the plaintiff's employment and to create an abusive working environment.

*Id.* The plaintiff must also demonstrate one of three bases for holding her employer liable—e.g., that the employer had actual or constructive knowledge of the hostile work environment and did not adequately respond. *Id.*

Factors relevant to determining whether the work environment is hostile include the frequency and severity of the alleged discriminatory conduct, whether that conduct is physically threatening or humiliating as opposed to mere offensive utterances, and whether it unreasonably interferes with an employee's work performance. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957-58 (10th Cir. 2012). The "totality of the circumstances is the touchstone" of a hostile work environment analysis. *Id.* at 959 (internal quotation marks omitted).

Plaintiff made additional factual allegations in an attempt to support a claim of hostile work environment:

> Further, Plaintiff's supervisor Sylvester Rose-Williams became hostile at work, even enclosing one of Plaintiff's female co-workers and a Benefits Specialist, Rosanna Martinez, in his office and began screaming, cussing, and throwing objects around the room as well as bringing up Plaintiff's name. [Doc. 43, p. 2, ¶ 3]

> Plaintiff also believes that all but one female Benefits Specialist were being discriminated against by Sylvester Rose-Williams, with his hostile and rude behavior. … The "favorite," Maria Delgadillo, an unmarried female who did not have children, was the only female that Plaintiff believes was not discriminated against. [Doc. 43, p. 2, ¶ 3]

> Rose-Williams targeted Plaintiff and co-workers who had children and displayed his anger and hostility towards them. [Doc. 43, p. 4, ¶ 10]

As discussed above, Plaintiff failed to properly support the first allegation—identifying only her own deposition testimony in which she relied on inadmissible hearsay. *See Johnson*, 594 F.3d at 1209-10; *Hall*, 935 F.2d at 1111. Thus the first allegation cannot be considered by this Court. The second allegation above is that Rose-Williams targeted all of the mothers in Plaintiff's department, and favored a female without children; as discussed above, these assertions

22

demonstrate, at best, discrimination against mothers—not against a protected class.  The third allegation again fails to show discrimination against a protected class (females).  There are no allegations that males were treated differently.

Plaintiff has not demonstrated that she was targeted "because of" her sex.  *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007); *Held v. Ferrellgas, Inc.*, 505 Fed. Appx. 687, 691 (10th Cir. 2012) (unpublished).  Plaintiff failed to identify any evidence that anger, hostility, or yelling was directed at females "because of" their sex.  *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (affirming summary judgment because plaintiff failed to produce evidence from which rational jury could infer conduct was motivated by bias on basis of sex); *Hoko v. Huish Detergents, Inc.*, 453 Fed. Appx. 799, 801-02 (10th Cir. 2011) (unpublished) (affirming summary judgment for defendant because there was no evidence that yelling at employee was based on racial animus).  Plaintiff's conclusory allegation that females were targeted is insufficient—and undermined by Plaintiff's allegation that a childless female was favored.  *See Hall*, 935 F.2d at 1111 (conclusory and self-serving affidavits are insufficient). At best, these allegations suggest discrimination against mothers—not against the protected class of females.  Plaintiff thus failed to satisfy the first or third element of a hostile work environment claim.

Nor has Plaintiff made a prima facie case on the fourth element.  Harassment must be "'so objectively offensive as to alter the "conditions" of the victim's employment.'"  *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  The extent of harassment is judged on an objective standard, considering all of the circumstances, from the perspective of a reasonable person in the plaintiff's position.  *Oncale*, 523 U.S. at 81.  Examples of the type of harassment that may support a claim of a hostile work environment include explicit or implicit

23

proposals of sexual activity, gender-specific comments and behavior exceeding flirtatiousness, and comments about a worker's sexual performance. *Harsco Corp.*, 475 F.3d at 1187-88; *see Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (stating rational jury must be able to find "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (internal quotation marks omitted)). Unpleasant and boorish conduct is insufficient to create a hostile work environment. *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997).

Plaintiff's allegations do not show that any alleged harassment was frequent. *See Hoko*, 453 Fed. Appx. at 802 (holding one or two comments insufficiently frequent). Nor do Plaintiff's allegations rise to the level of being sufficiently severe. *See Morris v. City of Colorado Springs*, 666 F.3d 654, 665 (10th Cir. 2012) (recognizing disjunctive requirement of either severe or pervasive conduct); *Held*, 505 Fed. Appx. at 691 (holding sporadic use of abusive language, rude behavior, or sharp tone not sufficiently severe). Title VII is not "'a general civility code for the American workplace.'" *Harsco Corp.*, 475 F.3d at 1186 (quoting *Oncale*, 523 U.S. at 80). Although even an isolated incident can satisfy the fourth prong if sufficiently severe, the alleged incident of yelling at Martinez was not directed at Plaintiff or even within Plaintiff's hearing. The other allegations of rude or hostile or angry behavior are conclusory and do not rise to the level of severity showing a hostile work environment. *See Morris*, 666 F.3d at 665-66 (affirming dismissal of claim asserting nurse was yelled at and her work was demeaned, along with being "flicked" on head and having pericardium tissue thrown at her in operating room).

Plaintiff's failure to show any one of the four elements of a prima facie case would be sufficient to justify granting summary judgment. Since Plaintiff failed to show three elements,

the Court grants Defendant summary judgment to the extent that Count I alleges a hostile work environment.

**F.  New Mexico Human Rights Act**

Section 28-1-7 of the New Mexico Human Rights Act tracks the language of Title VII of the Civil Rights Act.  NMSA 1978, §§ 28-1-1 to -15 (2005) ("NMHRA").  The New Mexico Supreme Court stated that the evidentiary methodology adopted in *McDonnell Douglas* for Title VII provides non-binding guidance for proving a violation under the NMHRA.  *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 127 P.3d 548, 551 (2005); *Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 8-11, 787 P.2d 433, 436-37.  The New Mexico Supreme Court has applied the *McDonnell Douglas* framework in cases claiming unlawful discrimination under the NMHRA, including sex discrimination based on hostile work environment.  *Juneau*, 2006-NMSC-002, ¶¶ 9, 23; *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶¶ 23-25, 91 P.3d 58, 68-69 (applying *McDonnell Douglas* framework and Title VII standard for hostile work environment).

Neither party has argued that a different analysis should apply in this case under the NMHRA than under Title VII.  Applying the *McDonnell Douglas* framework, the Court concludes that Plaintiff failed to carry her burden to make a prima facie case of sex discrimination and, alternatively, that Plaintiff failed to show pretext.  The Court dismisses with prejudice the NMHRA claim under Count I.

## CONCLUSION

With respect to Count I, the Court concludes that Defendant has carried its burden to show that there is no genuine dispute as to a material fact and Defendant is entitled to judgment as a matter of law.   Since Defendant's motion was directed against Count I only, Count II remains in the case.

**IT IS THEREFORE ORDERED** that Count I is **DISMISSED WITH PREJUDICE**.


_____
UNITED STATES DISTRICT JUDGE